TATE, Justice.
This is a proceeding for post-conviction relief. La.C.Cr.P. Arts. 351-70. The petitioner attacks his 1970 plea of guilty as invalid under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
As a result of this 1970 plea to a simple robbery charge, he was sentenced to five *93 years in the state penitentiary. Also, by reason of this plea, his parole from certain sentences imposed in 1965 was revoked. La.R.S. 15:574.10 (1968). The 1970 sentence is concurrent with the five years or so remaining on the 1965 sentences.
I.
We are faced with a threshold issue before we reach the merits of the prisoner’s contention that his 1970 guilty plea was taken in violation of Boykin:
Since the record shows that the prisoner is still serving the 1965 sentences not here attacked,[1] may he now attack the 1970 sentence ? The State contends that his attack on the 1970 sentence is premature— for, even if the 1970 sentence is set aside, the prisoner will still be confined by virtue of the 1965 sentences.
Louisiana’s post-conviction remedy is provided by Articles 351 through 370 of our 1966 Code of Criminal Procedure. Pertinently, the state courts must hear the application for such relief “ * * * unless it appears by the petition itself or by the documents annexed to it that the person in custody is not entitled to be set at liberty. * * * ” Article 354.
The State contends that this means the state courts are not required to consider applications for post-conviction relief unless the prisoner is entitled to be set “at liberty” from all confinement — that is, unless the prisoner is entitled to immediate release if his contentions are upheld.
The prisoner contends, on the other hand, that the italicized clause means the courts may consider the application unless the petition shows the prisoner is not entitled to be set “at liberty” insofar as the sentence attacked — that is, unless on the face of the papers he is not entitled to any relief whatsoever with regard to the sentence attacked. See Official Revision Comment (a).
The interpretation of the clause and the selection between the opposing constructions represents an issue of first impression. We have found no decision concerning it in the application of the predecessor statutes. See La.R.S. 15:121 (1950) and prior statutes.
The other American jurisdictions are divided as to the application .of similar limitations on the right to post-conviction relief.
*95 A dwindling majority of states will not consider an application for such relief by way of habeas corpus, if the applicant will not be released from confinement (even if he successfully invalidates the present sentence) because he is also held on a separate and valid conviction other than the one now attacked. These courts consider the application premature, mainly relying upon traditional common-law limitations upon the use of habeas corpus to question the prisoner’s present detention.
See: Patterson v. Smith, 227 Ga. 170, 179 S.E.2d 247 (1971); Wright v. Bennett, 257 Iowa 61, 131 N.W.2d 455 (1964); Ramsey v. Hand, 183 Kan. 307, 327 P.2d 1080 (1958); People ex rel. O’Dell v. Bannan, 365 Mich. 429, 113 N.W.2d 220 (1962); Petition of Evans, 147 Mont. 429, 413 P.2d 699 (1966); State v. Hatterer, 75 N.J.Super. 400, 183 A.2d 424 (1962); Brown v. Justice’s Court of Carson Township, 83 Nev. 272, 428 P.2d 376 (1967); Flowers v. Haskins, 25 Ohio St.2d 186, 267 N.E.2d 430 (1971); Stover v. Page, 450 P.2d 511 (Okl.Ct.Crim.App.1969); McCall v. State, 247 S.C. 15, 145 N.E.2d 419 (1965); Pulley v. Hunt, 440 S.W.2d 622, (Tenn.Ct. Crim.App.1969); In Re Bryant, Vt., 276 A.2d 628 (1971); Blowe v. Peyton, 208 Va. 68, 155 S.E.2d 351 (1967).
A. growing minority of states reach the opposite result and will consider an application for relief as to an invalid sentence, even though the petitioner may still remain incarcerated by virtue of sentences on other charges. Aside from finding ancient restrictions on habeas corpus inapplicable, the courts reaching this result point out that, by immediate review, the State is better able to re-try the offense (if the prisoner’s attack is sustained) than it would be many years later.
See: In re Terry, 4 Cal.3d 911, 95 Cal. Rptr. 31, 484 P.2d 1375 (1971); Frizzell v. State, Fla., 238 So.2d 67 (1970); State ex rel. Holm v. Tahash, 272 Minn. 466, 139 N.W.2d 161 (1965); Edwards v. Nash, 303 S.W.2d 211, (Mo.Ct.App.1957); Landreth v. Gladden, 213 Or. 205, 324 P.2d 475 (1958); Commonwealth ex rel. Stevens v. Myers, 419 Pa. 1, 213 A.2d 613 (1965); Brady v. Langlois, R.I., 243 A.2d 906 (1968); Brown v. Wolke, 39 Wis.2d 167, 158 N.W.2d 344 (19^8).
The modern interpretation of the federal habeas corpus statute is a further instance of the increasing trend to broaden the habeas corpus remedy to permit present attack upon an invalid conviction, even though it be concurrent with or consecutive to a valid sentence. The federal habeas corpus statute, pertinently, permits relief to a person “in custody”. 28 U.S.C. § 2241 (1966). See former 28 U.S.C. § 451 (1940), incorporating Section 14 of the Judiciary Act of 1789, 1 Stat. 73, 81, 82.
In McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), the Supreme Court *97 held that the federal writ was not available unless, as a result of favorable action, the person was entitled to immediate release from all custody. The basic reason was founded upon historic limitations of the English common law, from which we Americans derived our own habeas corpus remedy.
The McNally prematurity doctrine, first eroded by prior decisions, was finally overruled in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). The court there held that the McNally interpretation of “in custody” was unnecessarily narrow and that “ ‘custody’ comprehends respondents’ [the prisoners’) status for the entire duration of their imprisonment” 391 U.S. 64, 88 S.Ct. 1555, the whole of the duration being made up of the aggregate of the consecutive sentences.
The court considered several policy issues, including that the McNally doctrine fostered the staling of evidence and the dimming of memories relating to an alleged invalid conviction while a prisoner served out a valid sentence. The court squarely held that “a prisoner serving consecutive sentences is ‘in custody’ under any one of them for the purpose of” federal habeas corpus. 391 U.S. 67, 88 S.Ct. 1556.[2]
We find persuasive the reasoning of the jurisdictions which have overruled the McNally premáturity rule, as well as the recommendation of the American Bar Association Project on Standards for Criminal Justice.
Standard 2.3 of the Standards Relating to Post-Conviction Remedies (1968) states:
“ * * * [Tjhe availability of post-conviction relief should not be dependent upon the applicant’s attacking a sentence of imprisonment then being served or other present restraint. The right to seek relief from an invalid conviction and sentence ought to exist: * * * (i) even though the applicant has not yet commenced service of the challenged sentence; * * * ”
In the commentary discussing this recommended standard, the advisory committee states:
“The proposal in the standard to permit immediate review of a sentence not yet being served would eliminate one of the most frustrating elements of present post-conviction practice. Where consecutive sentences have been imposed, the immediate release condition can unreasonably postpone for years judicial consideration of the validity of a challenged conviction or sentence while the unchallenged sentences are being served. One of the most prevalent complaints about post-conviction review is the difficulty, once a conviction has been *99 set aside, of mounting a new prosecution many years after the crime. Should a retrial be necessary, it is to the great advantage of the prosecution and the defense to marshal their respective cases while the evidence is fresh and the witnesses are available. * * * Elimination of the custody condition zvould permit persons convicted to challenge * * * prison sentences concurrent to other unchallenged sentences, * * (Italics ours.)
We therefore hold that, under our post-conviction remedy, Articles 351 through 370 of the Code of Criminal Procedure, state courts may consider the merits of petitions for habeas corpus post-conviction relief, even though the petitioner is not entitled to immediate release from all confinement if successful in his attack on the present conviction. The courts may consider the merits of such applications, regardless of whether the other sentences are concurrent or consecutive.
We reach this conclusion in view of the broad statutory intent to permit full review of the legality of confinements, Article 362, as well as by reason of our interpretation of Article 354.
For purposes of Article 354, a person “in custody” by virtue of several sentences, whether they be consecutive or concurrent is, practically speaking, in custody for the aggregate of his sentences, both with regard to the potential duration of the confinement as well as with regard to eligibility for release by parole, etc. The proper meaning of Article 354 is, thus, that the state court to which an application for habeas corpus post-conviction relief is presented should consider it “unless it appears * * * that the person in custody is not entitled to be set at liberty” zvith regard to the sentence attacked.
II.
Accordingly, we reach the merits of the petitioner’s contention — that his plea of guilty of February 24, 1970, must be set aside, as taken in violation of the federal constitutional standards prescribed by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
In Boykin, the United States Supreme Court held:
“It was error, plain on the face of the record, for the trial judge to accept petitioner’s guilty plea without an affirmative showing that it was intelligent and voluntary. [395 U.S. 242, 89 S.Ct. 1711] * * * Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy *101 v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one’s accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record. [395 U.S. 243, 89 S.Ct. 1712.]” (Italics ours.)
The high court further noted that the trial judge must make sure that the accused “has a full understanding of what the plea connotes and of its consequence”. 395 U.S. 244, 89 S.Ct. 1712. It further quoted with approval the observation that, if guilty pleas “ ‘are to be insulated from attack, the trial court is best advised to conduct an *' * * examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.’ ” 395 U.S. 244, 89 S.Ct. 1713.
The minute entry of February 24, 1970 states: “Prior to arraignment the Court advised this defendant of his right to counsel, which right he waived and the Court, after interrogation of the defendant, being of the opinion that he could intelligently waive said right, ordered him arraigned. The accused, being present in Court, unaccompanied by counsel, upon formal arraignment pleaded GUILTY TO THE CHARGE OF SIMPLE ROBBERY, which plea the district attorney accepted. Waiving legal delays, the defendant was this day sentenced to serve a term of FIVE (5) YEARS in the Louisiana State Penitentiary at Angola.”
Moreover, the trial court contemporaneously had recorded the entire colloquy between itself and the accused. This was transcribed when the petition for post-conviction relief was filed. By making this contemporaneous recording, the trial court wisely avoided the expense and uncertain testimony of a later evidentiary hearing on the post-conviction remedy.[3]
Thus, the present minute entry does not literally show that the petitioner had waived any constitutional right other than his right to counsel. In the absence of contemporaneous recording proving waiver of the other rights alluded to by Boykin, a question might later arise as to the waiver of such other rights — a question which may be avoided by such a contemporaneous recording of the colloquy as was done here.
*103 In examining the colloquy, we are impressed with the solicitude of the trial judge in ascertaining the actual guilt of the accused and in ascertaining his intelligent waiver of counsel, as well as the voluntariness of his plea of guilty.
Nevertheless, the colloquy shows that the accused was not informed of and did not waive (1) his privilege against compulsory self-incrimination, (2) his right to trial by jury, and (3) his right to confront his accusers. As we read Boykin, in taking a plea of guilty, an express and knowing waiver of at least these three federal constitutional rights must be made, which waiver cannot be presumed. Under Boykin, the present plea of guilty, taken after Boykin’s effective date (June 2, 1969), must therefore be set aside.
We expressly do not here decide that the judge himself must conduct such examination or that a contemporaneous record must be made of it, both of which occurred in the present case. We do note, however, the views of some of the justices of this court and of some courts that Boykin (at 395 U.S. 242, 244, 89 S.Ct. 1709) requires this too.

Decree

Accordingly, for the reasons assigned, we conclude that we are required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) to set aside the plea of guilty of February 24, 1970 and the sentence resulting therefrom. We remand this case for such further proceedings as may be consistent with the views expressed herein,
Case remanded for further proceedings.

. Although in the trial court the petitioner attacked the 1965 pleas too as involuntarily taken, he did not re-urge this contention in this court, apparently conceding that Boykin is not retroactive. In neither the trial nor this court did the petitioner urge that the 1965 sentences should be set aside because his probation as to them was revoked solely because of his present allegedly invalid plea. But see Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941) and such succeeding jurisprudence as Smiley v. Wilson, 378 F.2d 144 (C.A.9, 1967).

. See Cloud v. State of Louisiana, 397 F.2d 252 (5th Cir. 1968), applying the Peyton rule and reversing a district court’s denial which had been founded on the overruled McNally.

. By doing so it also avoided the legal issue posed by the dissent in State ex rel. Thompson v. Henderson, 258 La. 548, 246 So.2d 859 (1971) — the view of some justices that Boykin requires not only the questioning by the judge but also a contemporary record showing compliance with Boykin’s requirements.