NEW JERSEY STATE PAROLE BOARD, PLAINTIFF-RESPONDENT, v. DAVID MANNSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 13, 1987—Decided November 4, 1987.

Before Judges J.H. COLEMAN and STERN.

*Marc C. Gettis,* designated attorney, argued the cause on behalf of appellant (*Alfred A. Slocum,* Public Defender, attorney; *Marc C. Gettis,* of counsel and on the letter brief).

*Stuart J. Lieberman,* Deputy Attorney General, argued the cause on behalf of respondent (*W. Cary Edwards,* Attorney General, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Stuart J. Lieberman,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

David Mannson appeals from a final determination of the Parole Board revoking his parole.

Following his arrest, on April 10, 1986 while on parole, Mannson was charged with violating the conditions of his parole. He waived a probable cause hearing, and a final revocation hearing was conducted on July 3, 1986 at the Youth Correctional Institution Complex at Bordentown, to which Mannson had been returned as a parole violator. Mannson was represented by counsel, and the arresting officer testified.[1] However, Mannson's supervising parole officer did not appear for the proceedings, leading the hearing officer to indicate that a hearing summary would be prepared on the record established. Thereafter, the hearing officer stated that "[t]his hearing is concluded."

In his subsequent written summary and opinion prepared for the Young Adult Panel of the Parole Board, the hearing officer concluded that, "[a]s there was no Parole Officer available to present evidence ... there [was] no clear and convincing evidence" sufficient to sustain any of the violations. However, on July 15, 1986, the Young Adult Panel of the Parole Board decided not to render a final determination and remanded the matter to a hearing officer with directions "to reconvene Mr. Mannson's hearing with a parole officer present in order to review subject's contested technical parole violations."

A continued hearing was scheduled for August 1, 1986, but was subsequently adjourned. The hearing was ultimately conducted on September 11, 1986, before a different hearing officer. On that day, Mannson's counsel objected to the continued proceedings, and the counsel who had represented him at the July 3, 1986 proceedings testified as to events which occurred

---

[1]As Manson had not been convicted of the new charges at the time of the hearing, the revocation was not based on the new charges themselves. See *N.J.S.A.* 30:4-123.60-30:4-123.62h.

that day. After hearing that testimony and testimony from the supervising parole officer concerning his non-appearance on July 3, 1986 and regarding Mannson's lack of reporting while on parole, the hearing officer found sufficient evidence to sustain three of the allegations that Mannson violated the conditions of parole. Following review of the hearing officer's summary and opinion, the Young Adult Panel of the Parole Board revoked Mannson's parole on October 3, 1986 and ordered that he serve 12 additional months before parole eligibility. Mannson's appeal to the full Parole Board was unsuccessful. He now appeals to us from the final determination of the Parole Board.

On this appeal, Mannson argues that (1) the Administrative Procedure Act, *N.J.S.A.* 52:14B-1 *et seq.*, does not apply to the New Jersey State Parole Board, which relied upon that Act in permitting evidence to be taken at a "reconvened" or second parole revocation hearing; (2) that "by holding a second final parole revocation hearing," Mannson was denied due process of law, and (3) that the conduct of the "reconvened" or "second final parole revocation hearing," violated the constitutional protection against double jeopardy.

It is true, as Mannson argues, that the decision to reconvene the revocation hearing was justified in light of *In re Kallen,* 92 *N.J.* 14 (1983), a decision of our Supreme Court permitting reopening of an administrative proceeding, and that *Kallen* was decided with respect to proceedings arising under the Administrative Procedure Act.[2] It is also true, as Mannson contends, that the parole revocation procedure is not subject to the Administrative Procedure Act, *see N.J.S.A.* 30:4–123.48(d), but that does not mean that an administrative agency cannot "reconvene" or "reopen" an administrative proceeding.

---

[2] As the Supreme Court noted in *Kallen,* that case concerned "the relationship between state administrative agencies and the Office of Administrative Law." 92 *N.J.* at 20.

We find no prohibition to the "reopening" or "reconvening" of an administrative proceeding, even if not subject to express legislative authorization, provided that no constitutional or statutory rights are violated. As the Supreme Court stated in *Kallen* "courts long have had the power to reopen the record to admit additional evidence prior to the entry of a final judgment. Since administrative agencies have the inherent authority to reopen, modify, or rehear even final orders, *a fortiori*, they like courts, possess the right to reopen or continue hearings prior to the entry of a final order." 92 *N.J.* at 24 (footnote omitted).[3]

At the time that the proceedings were reopened or reconvened, there had been no final determination on the revocation charges as the hearing officer's summary and opinion had not yet become the subject of a final determination by the Parole Board panel which was authorized to revoke parole. While the hearing officer has certain powers to continue parole and to release the offender, *see N.J.S.A.* 30:4-123.62f, once a final hearing is conducted it is the appropriate Parole Board panel which must make the ultimate determination with respect to revocation of parole. *See N.J.S.A.* 30:4-123.63(d); *N.J.A.C.* 10A:71-7.16(a). *See also In re Trantino Parole Application*, 89 *N.J.* 347, 364-366 (1982), where the Supreme Court held that "[t]he Parole Board retains the right to reconsider and redetermine a prior decision in appropriate circumstances, subject, of course, to limitations relating to fairness and reasonableness." *Id.* at 364 (citation omitted); *In re Kallen, supra*, 92 *N.J.* at 27.

As Mannson notes, *In re Trantino Parole Application, supra*, dealt with a determination concerning release of a prisoner on parole, and not with a parole revocation proceeding, and there are obvious differences between parole release and

---

[3]In a footnote following this statement, the Court stated, "[s]ince the ALJ's initial decision was not a final decision, Kallen's claims of double jeopardy and res judicata are inapplicable," citing *In re Trantino Parole Application*, 89 *N.J.* 347, 364 (1982).

rescission, on the one hand, and parole revocation on the other, *see e.g., In re Trantino Parole Application, supra; see also Morrissey v. Brewer,* 408 *U.S.* 471, 92 *S.Ct.* 2593, 33 *L.Ed.*2d 484 (1972); *New Jersey State Parole Board v. Byrne,* 93 *N.J.* 192 (1983); *New Thompson v. Jersey State Parole Board,* 210 *N.J. Super.* 107 (App.Div.1986); *O'Neal v. New Jersey State Parole Board,* 149 *N.J.Super.* 174 (App.Div.1977), appeal dismissed 75 *N.J.* 590 (1977). But those differences, although giving rise to different constitutional and statutory protections, do not require disparate determinations relating to the power of the Parole Board to "reconvene" or "reopen" proceedings in the absence of controlling legislation or basic unfairness. The question before us is whether Mannson was deprived of any rights embodied in the federal or state constitutions or in the statutes of this state.

*Morrissey v. Brewer, supra,* and its progeny guarantee that a parolee receives due process of law in connection with the parole revocation process. *Morrissey* embodies minimum standards required before revocation can be perfected. Those standards include:

(a) written notice of the claimed violation of parole;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. [*Morrissey v. Brewer, supra,* 408 *U.S.* at 489, 92 *S.Ct.* at 2604, 33 *L.Ed.*2d at 499.]

█ We cannot conclude that the "reconvening" of a parole revocation hearing before a hearing officer, and prior to any final determination or adjudication on the merits, violates any due process rights embodied in *Morrissey v. Brewer,* or any principle of fundamental fairness. *See In re Kallen, supra,* 92 *N.J.* at 25–27; *see also Wolff v. McDonnell,* 418 *U.S.* 539, 94

*S.Ct.* 2963, 41 *L.Ed.*2d 935 (1974); *Jenkins v. Fauver,* 108 *N.J.* 239 (1987).[4]

We also reject Mannson's argument that the double jeopardy guarantee prohibits the taking of additional evidence after completion of the initial hearing before the hearing officer. It is clear that the Fifth Amendment's double jeopardy clause does not apply to parole revocation proceedings. See *e.g. Jonas v. Wainwright,* 779 *F.*2d 1576, 1577 (11th Cir.1986), *cert.* den. — *U.S.* ——, 107 *S.Ct.* 115, 93 *L.Ed.*2d 62 (1986); *Garcia v. United States,* 769 *F.*2d 697, 700 (11th Cir.1985).[5] Although addressing the application of the double jeopardy clause to simultaneous revocation of parole and prosecution for a new offense based on the same transaction, the Seventh Circuit recently stated:

> The double jeopardy clause protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense. *United States v. Dinitz,* 424 *U.S.* 600, 96 *S.Ct.* 1075, 47 *L.Ed.*2d 267 (1976); its protections are not triggered by the revocation of parole. A parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the conditions of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law. A criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct. *U.S. v Whitney,* 649 *F.*2d 296, 298 (5th Cir.1981). Because the two proceedings serve different ends, the finding that the defendant no longer merits parole does not foreclose the criminal justice system from

---

[4]Although more than 60 days elapsed between detention on the parole revocation charges and the final revocation hearing, initial proceedings were adjourned at the request of the Office of the Public Defender which asked in May of 1986 that "this hearing be postponed pending further word from our office" and which asked that the "reconvened" proceedings be postponed until a transcript of the original hearing was prepared, and thereafter, until "a mutually convenient time" so that an Assistant Deputy Public Defender could "appear as a witness for Mr. Mannson." Accordingly, there is no express argument that the timing of the hearing and final revocation deprived defendant of due process or that the proceedings were adjourned for more than 120 days at the request of the Parole Board or the hearing officer. See *N.J.S.A.* 30:4–123.63.

[5]Moreover, there was no final adjudication on the merits. *Cf. e.g., Swisher v. Brady,* 438 *U.S.* 204, 98 *S.Ct.* 2699, 57 *L.Ed.*2d 705 (1978).

punishing the defendant for that conduct. [*United States v. Hanahan*, 798 F.2d 187, 189–190 (7th Cir.1986)].

As our state constitutional protection against double jeopardy is co-extensive with the federal constitution or is to be interpreted consistent with its broader provision, *see e.g. State v. Barnes*, 84 *N.J.* 362, 370 (1980); *State v. Rechtschaffer*, 70 *N.J.* 395, 404 (1976), defendant's claim under the New Jersey Constitution, *N.J. Const.* (1947), Art. I, ¶ 11, must likewise fall. *See also In re Kallen, supra*, 92 *N.J.* at 24, n. 6, *In re Trantino, supra*, 89 *N.J.* at 364; *Atkinson v. Parsekian*, 37 *N.J.* 143 (1962).

Accordingly, the final determination revoking defendant's parole is affirmed.